RICHARD S. WYLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19393. Promulgated June 23, 1950.

*John H. McEvers, Esq., Reece A. Gardner, Esq.,* and *G. Lee Burns, Esq.,* for the petitioner.

*Frank M. Cavanaugh, Esq.,* for the respondent.

1258

[1] We assume this is only one-third of Peat's business in the Kansas City Office. Bailey's testimony in this regard was as follows:

"Q. Mr. Bailey, to what extent did the business that you procured, that you acquired from Mr. Wyler, increase your business that you already had?

"A. To the best of my recollection, about a third."

OPINION.

HILL, *Judge*: The respondent contends that the $50,000 involved was not payment for the sale of petitioner's good will, but, instead, was payment for personal services which petitioner performed for Peat under the terms of the agreement dated February 7, 1944. Respondent supports his position by calling particular attention to paragraph 15 of that contract, which provides that "this is an agreement for personal service * * *." He states that such language "should prevail as a clear statement of what was intended by the parties to be covered by the agreement." Nowhere, he argues, does the agreement regard "good will" as an asset apart from future earnings for personal services. He says further:

> * * * The contract, in fact, directs that petitioner keep his good will. His contingent compensation is scaled in proportion to his success in so doing. Peat, Marwick, Mitchell and Company's ultimate acquiring of a right to serve petitioner's clients, which apparently is the "good will" argued for, is expressly tied into the services to be performed under the contract. * * *

The respondent also claims that, even assuming a sale of good will was intended under the contract, nevertheless, "* * * the law is well settled that a professional man accrues no good will as a salable property apart from his person," relying principally upon *E. C. O'Rear*, 28 B. T. A. 698; affd., 80 Fed. (2d) 473.

The petitioner maintains that the $50,000 involved was paid by Peat to him in consideration of the transfer and sale to that firm of his accounting practice, or his good will, and that the resulting profit from that sale was capital gain and taxable as such under the provisions of section 117, Internal Revenue Code. He urges that the history of the negotiations resulting in the contract of February 7, 1944, the circumstances surrounding its execution, and the contract itself show definitely that Peat paid $50,000 for petitioner's practice. That payment, he contends, had no relation to his personal services performed for Peat, pointing out that he was paid a separate amount for them.

The first question which we must decide is whether good will under any circumstances may be sold by a person engaged in a profession. And this, in turn, raises the more basic question, what is good will? The parties use the terms petitioner's "good will" and "accounting practice" synonymously. There is no apparent dispute between the parties as to the meaning of the term "good will." In any event, the courts include as a leading element of good will the probability that the customers of the old establishment will continue their patronage. *Burke* v. *Canfield*, 121 Fed. (2d) 877; *Rodney B. Horton*, 13 T. C. 143; appeal dismissed, Jan. 24, 1950. See also 38 C. J. S., sec. 1, p. 949, and

cases cited. So we here, for the purposes of this case, shall treat the terms "good will" and "accounting practice" as being the same.

There is conflict among the courts as to whether or not vendible good will can exist in a professional business. It has been held that salable good will can exist only in commercial or trade enterprises. In 24 Am. Jur. § 11, p. 808, however, it is stated:

> * * * The better doctrine, however, appears to be that good will also exists in a professional practice or in a business which is founded upon personal skill or reputation. Where a person acquires a reputation for skill and learning in a particular profession, as, for instance, in that of a lawyer, a physician, or an editor, he often creates an intangible but valuable property by winning the confidence of his patrons and securing immunity from successful competition for their business, and it would seem to be well settled that this is a species of good will which may be the subject of transfer. The courts have not infrequently adjudicated rights relating to good will in such cases with seemingly no question as to the reality of the existence of this property right. * * *

See also cases cited in 24 Am. Jur. § 11, pp. 808, 809.

In *Rodney B. Horton, supra*, we held that good will was a part of the assets transferred in a sale by a certified public accountant of his business. We do not believe that that case is distinguishable from the one here and we agree with petitioner that under the circumstances of this case he possessed vendible good will.

Having decided, then, that here there was vendible good will for sale, we must next decide whether petitioner in fact sold it, or whether the $50,000 was a payment for his personal services, as respondent urges.

We have found as a fact that the $50,000 involved was paid as the purchase price for petitioner's practice, or his good will. We base our finding upon the testimony presented at the hearing and the terms of the various documents in evidence, including the contract. Miller Bailey, the senior partner of Peat, who was in on all negotiations leading to the contract of February 7, 1944, testified as follows concerning that payment:

Q. So you met his terms of the $50,000 to get him on a 3-year contract?

A. It wasn't his terms. It was our terms. We offered him $50,000.

Q. To get him on a 3-year contract?

A. No, not to get him on a 3-year contract; to get his practice, to get his good will.

Petitioner testified as follows:

A. The $50,000 was in consideration of the transfer of my practice, my business, to Peat, Marwick, Mitchell and Company.

Q. The transfer to the right to these earnings that would result thereafter to Peat, Marwick, Mitchell and Company?

A. I presume the transfer of earnings which they might get from the properties that they bought.

In the memorandum dated January 25, 1944, which the senior partner of Peat wrote to the other partners there appears the statement that "The major question was what to pay for the practice. That was discussed at length first by Mr. Bailey and myself and then with Mr. Wyler. * * *"

As shown from the portions of this memorandum contained in our findings, Hall recommended that $50,000 should be paid for such practice.

Paragraph 10 of the contract between petitioner and Peat contained the provision that "in consideration of the transfer of good will by Second Party to First Party provided for herein, First Party will pay to Second Party the sum of Fifty Thousand Dollars ($50,000) in cash upon the signing of this agreement * * *." We think, in view of the above, that the following language from *Rodney B. Horton, supra,* is appropriate here:

> * * * The purchaser certainly thought it was buying good will and agreed to pay for it. We agree that good will was a part of the assets transferred, and that payment was made for it. Good will is a capital asset and any gains resulting from the sale thereof are capital gains. * * *

Respondent cites in support of his argument that good will was not sold by petitioner *E. O. O'Rear, supra.* The Court in that case held that the agreements there were not contracts for the sale of good will. That case, therefore, is not controlling, for the terms of the contract involved and the circumstances surrounding its execution clearly indicate that there was a sale of good will by petitioner to Peat. The other cases cited by respondent are also distinguishable.

This case differs from that part of the *Horton* case holding payment made for an agreement not to compete was ordinary income, by reason of our conclusion of fact here that, notwithstanding the contract provision that petitioner would not compete, the entire sum paid was for petitioner's good will.

In view of the fact that petitioner does not contend that he had any cost basis for the good will (see *Rodney B. Horton, supra*), $50,000 is taxable to petitioner for his taxable year 1944 as capital gain under section 117, Internal Revenue Code.

It follows that respondent erred in his determination.

*Decision will be entered for petitioner.*